Faye F. **BRANSON** and Christine K. **Saccomanro, Plaintiffs,**

v.

**PRICE RIVER COAL COMPANY, an Indiana corporation, Defendant.**

Civ. No. 84–920G.

United States District Court, D. Utah, C.D.

Feb. 3, 1986.

Jeffrey Oritt, Salt Lake City, Utah, for plaintiffs.

David A. Anderson, James M. Elegante, W. Mark Gavre, Salt Lake City, Utah, for defendant.

## MEMORANDUM DECISION AND ORDER

J. THOMAS GREENE, District Judge.

This matter came on regularly for hearing on December 17, 1985, on defendant Price River Coal Company's Motion for Summary Judgment. David A. Anderson, James M. Elegante and W. Mark Gavre appeared on behalf of defendant Price River Coal Company and Jeffrey Oritt appeared on behalf of plaintiffs Faye F. Branson and Christine K. Saccomanno. The issues were thoroughly briefed by plaintiffs and defendant and the parties had opportunity to present extensive oral argument, after which the Court took the matter under advisement. Now, being fully advised, the Court hereby renders its decision.

## FACTUAL BACKGROUND

The plaintiffs are former salaried employees in the Administrative and Accounting Departments of defendant Price River Coal Company (hereinafter "Price River") who were laid off in 1982 as part of a major reduction in Price River's work

force. Their termination was effective two years later, on December 31, 1984. They bring this action alleging that they were discharged and not recalled by Price River to the same or similar positions because of their age, in violation of the Age Discrimination in Employment Act, 29 U.S.C. §§ 621, et seq. (hereinafter "ADEA").

Beginning in December 1979, Price River operated two underground coal mines, a coal preparation plant and office facilities in Helper, Utah. Price River, a wholly-owned subsidiary of American Electric Power, shipped the coal to fuel generating plants of its parent company. Beginning in 1981, however, depressed economic conditions in the parent company's service area resulted in a marked decrease in the demand for power and thus for coal. Price River was forced to curtail its mining operation and reduce its work force, which it did in three phases over a three-month period. The first phase occurred in October 1982 when Price River closed one of the operating mines and laid off the mine's work force. At that time, Price River also eliminated two positions in the Administration Department and one in the Accounting Department. The second phase occurred in mid-November 1982 in connection with preparation for shutdown of the second active mine. At the insistence of the Vice President and General Manager, Gordon Cook, at that time department heads reduced their staffs further. The Accounting Department was reduced to four people, including plaintiff Saccomanno. The third and final phase occurred at the end of December 1982, at which time the defendant stopped all mining activities in the second mine, reduced the company's work force and kept the company's operations on a care and maintenance basis only. Both plaintiffs were laid off at that time. At the close of 1982, Price River had reduced its work force by 87%, from 585 employees to 77. During 1983 and 1984, Price River experienced a moderate upswing in business, but by the end of 1984 it had further reduced its total work force to 40 employees.

*Plaintiff Saccomanno*

Plaintiff Saccomanno began her employ on December 10, 1945 as a weigh master and bookkeeper for Hardscrabble Coal Company, which changed its name to Carbon Fuel in 1954. Her work as a bookkeeper included doing the United Mine Workers Association ("UMWA") and salaried payrolls. She became the office manager for the company in 1964 and remained in that position until 1975. In 1971, Carbon Fuel was sold to McCulloch Oil Corporation, which renamed the operational company as Braztah Corporation. Mrs. Saccomanno continued as office manager for Braztah until August 1, 1975, after which she became an accountant. Her job responsibilities included putting out the salaried payroll and doing the quarterly federal and state reports, state insurance reports, pension reports, annual reports for UMWA and salaried payrolls, and royalty reports for the UMWA payroll. She continued those responsibilities when American Electric Power purchased Braztah Corporation and the property from McCulloch Oil, and established Price River, as a wholly-owned subsidiary, to run the mining property in December of 1979. Mrs. Saccomanno continued those responsibilities until April of 1981, at which time she became a senior accountant. In February of 1982, she became the accounts payable supervisor. In addition to her experience, Mrs. Saccomanno had a high school education and had taken an office machines class at the College of Eastern Utah. She did not have a contract of definite duration and was not covered by a collective bargaining agreement.

Prior to the last phase of reductions, Mrs. Saccomanno was one of the four remaining employees in Price River's Accounting Department. Management for the defendant instructed Mr. Anderson, the manager of the Accounting Department, to reduce the accounting personnel to three by December 31, 1982, consistent with the other reductions that were taking place. Based upon the continuing needs of Price River and the relative skills of the remaining accounting employees, Mr. Anderson

determined that either Mrs. Saccomanno or Mr. Hanson would be discharged. The primary responsibility of the remaining accounting position was the UMWA payroll. Mr. Hanson, the younger employee, was performing the UMWA payroll at the time of the layoffs, and had helped in the development of Price River's computerized payroll system. Mrs. Saccomanno had not done the UMWA payroll for an employer since 1975, more than seven years before her termination. While Mrs. Saccomanno had a high school education, Mr. Hanson had studied business management for four years at the College of Eastern Utah. Plaintiff does not dispute that Price River was experiencing a rapid reduction in its work force and was conscious of the potential cost of retaining an additional employee should plaintiff require training, but the parties do dispute the amount of training, if any, the plaintiff would have required to perform the UMWA payroll. Mr. Anderson felt that Mr. Hanson was more qualified than Mrs. Saccomanno to perform the remaining tasks in the Accounting Department because Mr. Hanson had more experience handling the payroll for hourly employees represented by UMWA, which was a primary responsibility of the remaining accounting position. Mrs. Saccomanno does not dispute that Mr. Anderson felt that Mr. Hanson was more qualified for the remaining accounting position. However, plaintiff disputes that, in fact, Mr. Hanson was more qualified and experienced in handling the UMWA payroll.

On December 28, 1982, Price River offered Mrs. Saccomanno a position at a truck weigh station, which she declined to accept. Therefore, she was laid off three days later. Thereafter, on May 12, 1983, Price River offered Mrs. Saccomanno a position requiring an estimated 4–6 weeks of underground inventory work. Mrs. Saccomanno declined to accept that job, so the same position was offered to a Linda Gonzales, who accepted the position. Ms. Gonzales had had prior experience doing underground inventory work, whereas the plaintiff had not. Ms. Gonzales ended up working 21 days underground and 12 days above ground. Her acceptance of that position also resulted in continued employment for Ms. Gonzales with Price River for an additional six months.

Mrs. Saccomanno alleges that her discharge from Price River was motivated by her age and that a younger, less qualified employee was retained in her stead. She also claims that she was not recalled to an accounting position, whereas a younger less qualified employee in fact was, and that failure to recall was motivated by her age. Although she was offered a position, plaintiff claims that Price River gave her insufficient information regarding the position for her really to know what the job involved and that thereafter Price River gave the job to a less qualified, younger employee.

*Plaintiff Branson*

Faye F. Branson began working for Carbon Fuel Coal Company in 1964 as the accounts payable bookkeeper. She, too, worked in several capacities while employed by the coal companies. Prior to her work with the coal companies, she worked as a secretary and bookkeeper for fourteen years. In 1975, she became the accounts payable supervisor for Carbon Fuel. She held that position until July 1976, when she became Mr. Boyd Harvey's administrative assistant. Mr. Harvey was the Manager of Safety, Coal Production and Special Projects. Mrs. Branson became the traffic supervisor for Braztah in February 1977 while continuing her responsibilities as Mr. Harvey's administrative assistant. On December 6, 1982, Mr. Harvey suffered a heart attack and was given a long-term disability leave which lasted until his death on May 8, 1983. The position vacated by Mr. Harvey was never filled by another employee and was eliminated by Price River. Therefore, Mrs. Branson's duties as administrative assistant to Mr. Harvey also were eliminated. With the cessation of coal shipments pursuant to the overall cutback, Mrs. Branson's duties as traffic supervisor also were reduced. In 1983, the train scheduling that Mrs. Branson had previously performed was computerized

and the computation of coal sample analyses previously performed by Mrs. Branson was eliminated. Mrs. Branson was not recalled to her previous position after her layoff because that job had disappeared. At the time of her layoff, the company did not offer her other jobs held by incumbent employees, and after her layoff, did not recall her to any other position because those positions were filled by employees who had previously held them.

Mrs. Branson brings this action alleging that Price River terminated her because of her age in violation of the ADEA. She bases that claim primarily on the assertion that she was equally or more qualified for several of the positions held and retained by younger employees. Mrs. Branson does not dispute, however, that the other employees were incumbents in other departments or were recalled to positions they previously had held, and that plaintiff would have required at least minimal and possibly more training to assimilate into any of those jobs. Plaintiff also made a claim for failure to recall, based upon the above stated facts, in violation of the ADEA. However, plaintiff Branson has abandoned that claim and the parties have eliminated that matter by stipulation.

## ANALYSIS

### Burden of Proof in ADEA Cases

Defendant Price River has moved for summary judgment alleging plaintiffs' failure to establish a prima facie case under the ADEA requirements or, in the alternative, plaintiffs' failure to show that defendant's articulated reasons for the termination and the failure to recall were merely a pretext for discrimination. The Tenth Circuit has recently explained that the plaintiff's ultimate burden in an ADEA case is to show that age was a determining factor in the decision to terminate her, although it need not be the sole factor. The Court stated:

> [I]t is not enough that age discrimination figure in the decision to demote or discharge; age must "make a difference" between termination and retention of the

employee in the sense that "but for" the factor of age discrimination, the employee would not have been adversely affected.

*Perrell v. FinanceAmerica Corp.*, 726 F.2d 654, 656 (10th Cir.1984) [quoting *Cancellier v. Federated Dep't Stores, Inc.*, 672 F.2d 1312, 1316 (9th Cir. *cert denied*, 459 U.S. 859, 103 S.Ct. 131, 74 L.Ed.2d 113 (1982)]. Although the plaintiffs' burden is significant in this regard, without such a showing, the plaintiffs' employer cannot be found to be in violation of the Act. Simply stated at this procedural juncture, in order to survive defendant's Motion for Summary Judgment, plaintiffs must establish the existence of facts which could indicate that, but for their age, they would not have been terminated, and that in the case of plaintif Saccomanno that she would have been recalled.

### Allocation of Burdens of Proof

Discrimination as a motivation for one's actions is seldom admitted and is often cloaked in thin robes of what the law deems legitimate. For that reason, evidence of discrimination in most contexts will be indirect or circumstantial. The United States Supreme Court recognized early on the problems of proof extant in such an inquiry. In *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), a Title VII race discrimination case, refined in *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981), also a Title VII case, the Supreme Court devised the now widely used allocation-of-burdens, or indirect, method of proof in discrimination cases which is calculated to afford plaintiffs a fair and reasonable means to prove their case. Although Title VII race discrimination was the object of the original judicial formulation, Title II ADEA cases, it was found, confront the same problems of proof. Because the Acts are similar in purpose and structure, most courts, including the Tenth Circuit, were inclined "to apply the standards used in Title VII cases to cases brought under the

ADEA." *Schwager v. Sun Oil Co.,* 591 F.2d 58, 60 (10th Cir.1979). *See Dartt v. Shell Oil Co.,* 539 F.2d 1256 (10th Cir. 1976), *aff'd,* 434 U.S. 99, 98 S.Ct. 600, 54 L.Ed.2d 270 (1977).

The allocation of burdens in an age discrimination case includes the required showing that age must make a difference in an employer's employment decision. The plaintiff has the burden of persuasion throughout the case and has the initial burden of production in order to establish a prima facie case of age discrimination. Once the Plaintiff establishes a prima facie case by a preponderance of the evidence, the burden of production shifts to the defendant who must articulate legitimate, non-discriminatory reasons for plaintiff's termination. The defendant need only raise genuine issues of material fact as to those reasons and need not prove their legitimacy by a preponderance of the evidence. Assuming that the defendant effectively shoulders that burden, the plaintiff then must show with specific evidence that the reasons the defendant offered for termination are merely pretexts for age discrimination. The plaintiff may succeed by showing that "a discriminatory reason more likely motivated the employer or ... by showing that the employer's proffered explanation is unworthy of credence." *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 254–56, 101 S.Ct. 1089, 1094–95, 67 L.Ed.2d 207 (1981) [citing *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973) ].

*Prima Facie Proof in Reduction in Force Cases*

■ The ADEA prima facie case may be variable as to both application and content. Not only will the amount of proof required to establish a prima facie case of age discrimination vary depending on the specific fact situation, but the type of proof for a prima facie case may also vary depending on the specific fact situation. The Supreme Court recognized this need in *McDonnell Douglas:* "The facts necessarily will vary ..., and the specification

above of the prima facie proof required ... is not necessarily applicable in every respect to differing fact situations." 411 U.S. at 802 n. 13, 93 S.Ct. at 1824 n. 13. If such were not the case, the ADEA could effectively protect only a limited number of employees in specific contexts.

In a reduction in force setting, the elements of a prima facie case necessarily differ from those in a replacement case, a promotion case, a demotion case, a failure to hire case, or a typical termination case. However, the Act which "prohibits arbitrary age discrimination in employment," 29 U.S.C. § 621(b), clearly covers reduction in force cases. The challenge, then, is to structure elements of a prima facie case in the reduction in force context which present a fair and reasonable means for plaintiffs to prove that they were the objects of age discrimination. All parties in this action agree that the following are the necessary elements of proof required to establish a prima facie case in a reduction-in-force case:

(1) Plaintiff must be within the protected age group (40–70);

(2) Plaintiff must have been adversely affected by the defendant's employment decision;

(3) Plaintiff must show that he or she was qualified to assume another position at the time of discharge, demotion or layoff; and

(4) Plaintiff must produce evidence, circumstantial or direct, from which a factfinder might reasonably conclude that the employer intended to discriminate on the basis of age in reaching the employment decision.

*EEOC v. Western Electric Co.,* 713 F.2d 1011, 1014–15 (4th Cir.1983), *Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1438 (11th Cir. 1983), and *Williams v. General Motors Corp.,* 656 F.2d 120, 129 (5th Cir.1981), *cert. denied,* 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982) (defendant's authority); *see also Brooks v. Trans World Airlines, Inc.,* 574 F.Supp. 805, 811 (D.Colo. 1983) [citing *Baldwin v. Sears, Roebuck & Co.,* 667 F.2d 458, 461–62 (5th Cir.1982) ].

(Plaintiffs' authority). The Court agrees with the parties that these elements of proof, interpreted correctly and upon a sufficient showing thereof, would satisfy the plaintiff's initial burden of production.

### Proof of Intention to Discriminate

■ The parties disagree as to the meaning of the fourth element as set forth above. Defendant's position is that plaintiffs must present evidence which

lead[s] the factfinder reasonably to conclude either (1) that defendant consciously refused to consider retaining or relocating a plaintiff because of his age, or (2) defendant regarded age as a negative factor in such consideration.

*Williams*, 656 F.2d 120, 129–30 (5th Cir. 1981), *cert. denied*, 455 U.S. 943, 102 S.Ct. 1439, 71 L.Ed.2d 655 (1982). *See also Allison v. Western Union Telegraph Co.*, 680 F.2d 1318, 1321 (11th Cir.1982) (applying the *Williams* standard). Defendant's position, as explained in *Williams*, is that the ADEA places no affirmative duty upon employers to treat members of the protected class preferentially. The protected jobs must be accorded *neutral status* under the Act, and age must "neither facilitat[e] nor hinder[ ] his employment, his chances for advancement, or his exposure to demotion or discharge." Under the defendant's conception, the fourth element requires a showing of "some evidence that the employer has not treated age neutrally, but has instead discriminated based upon it." *Williams*, 656 F.2d at 129–30. Plaintiffs argue that the *Williams* test "defeats one of the purposes of the *McDonnell Douglas* formula—allowing plaintiff to prove a prima facie case objectively, without having to exhume the direct evidence of intent buried in the mind of the employer." *Oxman v. WLS-TV*, 609 F.Supp. 1384, 1390 (N.D.Ill. 1985) Plaintiffs also claim that the *Williams* test "collapses the prima facie case with the third, or 'pretext,' step in the burden-shifting game." Plaintiffs urge the approach set forth in *Oxman v. WLS-TV*, 609 F.Supp. 1384, (N.D.Ill.1985) wherein the court stated:

Even an employer who knowingly discriminates on the basis of age may leave no written records revealing the forbidden motive and may communicate it orally to no one. When evidence is in existence, it is likely to be under the control of the employer, and the plaintiff may not succeed in turning it up. The indirect [*McDonnell Douglas*] method compensates for these evidentiary difficulties by *permitting the plaintiff to prove his case by eliminating all lawful motivations instead of proving directly an unlawful motivation.* (Emphasis added.)

*Id.* at 1391 n. 6 [quoting *La Montagne v. American Convenience Products, Inc.*, 750 F.2d 1405, 1410 (7th Cir.1984)]. The *Oxman* approach requires a showing of "disfavorable" treatment to establish a prima facie case. The Court in *Oxman* makes it clear, however, that disfavorable treatment means more than simply a showing that two employees were treated differently, the protected employee being terminated. A careful reading of the two cases, *Williams* and *Oxman*, does not convince the Court that there is much difference between the two tests. The Court considers the *Williams* standard to be the proper measure of the fourth element of prima facie case in a reduction in force context. *Oxman* simply supplies an example of the type of proof required under *Williams*. In other words, plaintiffs must produce evidence, direct or circumstantial, of intentional discrimination, for example, by showing that plaintiffs were rejected even though "some other positions [were] available at the time of the discharge for which plaintiffs [were] qualified." *Oxman*, 609 F.Supp. at 1390. In an ADEA case, if a plaintiff can show only that her job was eliminated and that she was terminated, but that no jobs were available for which she was qualified and into which younger employees were placed in her stead, there would be no disfavorable treatment and thus no inference of intent to discriminate. On the other hand, a plaintiff might be able to establish the fourth element of a prima facie case by showing that although her job was eliminated and she was terminated,

other younger employees whose jobs also were eliminated were retained in positions that plaintiff was as qualified to assume. Unless the plaintiff could prove that the decision to eliminate the job was motivated by age discrimination (such as by showing that the job continued under a different title or that the responsibilities continued to exist in a significant way and were redistributed among other unprotected employees), the plaintiff simply does not have a case of age discrimination.

*Reduction in Force Principles Applied to Plaintiffs*

*—Plaintiff Branson*

█ Plaintiff Branson's remaining claim[1] is that she was discharged because of her age during Price River's December 1982 reduction-in-force in violation of the ADEA. In response to defendant's Motion for Summary Judgment, plaintiff has attempted to set forth facts sufficient to raise a genuine issue of material fact as to each element of the prima facie case. For purposes of the Motion, the Court recognizes that plaintiff has shown that she belongs to the statutorily protected age group and that she was discharged in December of 1982. Defendant concedes those two elements. The point of conflict begins with the third element. Plaintiff Branson claims that she was qualified to fill any of the positions occupied by three younger employees who were not discharged, but who were in different departments than plaintiff. In plaintiffs' Memorandum in Opposition, Mrs. Branson outlines the responsibilities of each of those positions and then sets forth her own qualifications, claiming that she was more qualified than the incumbents. Regarding her assimilation into any of those positions, however, the plaintiff concedes that some training would have been required. Since we consider that the fourth required element of the prima facie case is fatal to plaintiff's claim, the Court will not get into the definitional difficulties in discussing qualifications versus assimila-

tion and will assume the existence of a genuine issue of material fact as to plaintiff's qualifications.

Plaintiff Branson has failed to produce evidence that age was a factor in the employer's decision or that she was treated less favorably than younger employees. The mere fact that she was terminated in a reduction-in-force while other employees, including some who were under 40 years of age, were retained does not create an inference of intentional age discrimination in this case. Plaintiff Branson's job essentially was eliminated. No one was hired in her place to assume her former responsibilities and it is not disputed that those responsibilities did not continue in any significant way after her discharge. The employees who plaintiff claims were less qualified were incumbents in positions which were not eliminated during the reduction-in-force. As a result, plaintiff is unable to show that there were jobs available for which she was qualified which were offered to younger employees. Also, plaintiff has failed to set forth any facts to show that her "job elimination" was motivated by age discrimination.

*—Plaintiff Saccomanno's Discharge Claim*

█ Plaintiff Saccomanno alleges that she was discharged because of her age during the December 1982 reduction-in-force in violation of the ADEA. Plaintiff established that she is a member of the protected class and that she was discharged. She also contends that she was qualified to assume another position at the time of her discharge. Although this third element is challenged, we assume it to be established for purposes of this analysis. As to the fourth element of the prima facie case, however, a very close question is raised. In order to raise an inference of intent to discriminate plaintiff must show that she was as qualified for the remaining position as was the retained employee. Without such a showing she would be unable to establish that she had been treated

1. Because the parties eliminated by stipulation plaintiff Branson's claim of age discrimination for Price River's alleged failure to recall her, the Court will not address that claim.

less favorably than the younger, non-protected employee. Although the facts show that Mrs. Saccomanno had vast experience in many areas of the coal industry, on balance it is clear that the relevant and timely experience required to assume the third accounting position in furtherance of the company's immediate needs weighed substantially in favor of Mr. Hanson. Accordingly, it does not appear that plaintiff has carried the burden to establish the fourth element of the prima facie case.

But even assuming that plaintiff has stated a prima facie case of age discrimination, the Court finds that plaintiff has not raised a genuine issue of material fact that the defendant's articulated reasons for its employment decision were mere pretexts for age discrimination. The defendant, through deposition testimony and affidavit, has explained its decision to terminate the plaintiff and retain Mr. Hanson. As stated above, Mr. Hanson was the incumbent performing the UMWA payroll for Price River and had helped to develop Price River's computerized UMWA payroll system. Mrs. Saccomanno had not done the UMWA for any employer for over seven years. Mr. Hanson had more formal education than plaintiff Saccomanno. Based upon these factors the employer assumed that Mrs. Saccomanno would require some training before she could perform the UMWA payroll on her own, whereas Mr. Hanson was currently performing that responsibility. The employer therefore decided to retain Mr. Hanson for the remaining position because of the nature of the remaining responsibilities and the speed with which those responsibilities would have to be performed due to the reduced manpower. On December 28, 1982, Price River offered Mrs. Saccomanno a position at a truck weigh station which she declined to accept. Therefore, she was discharged three days later.

Once the defendant articulates its legitimate nondiscriminatory rationale for its employment decision, the burden of production shifts to the plaintiff to prove that the legitimate reasons offered by the defendant were not his true reasons but were a pretext for discrimination. The Supreme Court in *Burdine* said:

> If the defendant carries this burden of production, the presumption raised by the prima facie case is rebutted, and the *factual inquiry proceeds to a new level of specificity....* The plaintiff retains the burden of persuasion. She now must have the opportunity to demonstrate that the proferred reason was not the true reason for the employment decision. This burden now merges with the ultimate burden of persuading the Court that she has been the victim of intentional discrimination.

*Burdine*, 450 U.S. 255–56, 101 S.Ct. 1094–95 (emphasis added) (footnotes omitted).

To avoid summary judgment after a defendant has articulated its reasons for terminating a plaintiff, conclusory or unsubstantiated claims of discrimination or speculation will not suffice. As one court stated:

> A party opposing a summary judgment motion must produce "specific facts showing that there remains a genuine issue for trial" and evidence " 'significantly probative' as to any [material] fact claimed to be disputed." ... [Plaintiff's] mere assertions that [defendant] had discriminatory motivation and intent ... were inadequate, without substantial factual evidence, to raise an issue precluding summary judgment.... Plaintiffs in ADEA cases must tender a genuine issue of material fact as to pretext in order to avoid summary judgment.

*Steckl v. Motorola, Inc.*, 703 F.2d 392, 393 (9th Cir.1983) [quoting *Ruffin v. County of Los Angeles*, 607 F.2d 1276, 1280 (9th Cir. 1979), *cert. denied*, 445 U.S. 951, 100 S.Ct. 1600, 63 L.Ed.2d 786 (1980) ]. Cases discussing the plaintiff's burden of showing pretext emphasize that plaintiffs may not base their pretext arguments on mere conjecture. Nor may plaintiffs avoid a motion for summary judgment merely by showing that the employer's decision was unwise or unfair. For example:

It is important to remember that the plaintiff must show that the explanation is a pretext *for discrimination.* It is not enough for the plaintiff to show that the employer made an unwise business decision, or an unnecessary personnel move. And it is not enough for the plaintiff to show that the employer acted arbitrarily or with ill will. These facts, even if demonstrated, do not necessarily show that *age* was a motivating factor. The plaintiff's mere conjecture that age was the deciding factor—based on plaintiff's belief that other factors were an insufficient basis—does not provide the basis for denial of a motion for summary judgment.

*Chipollini v. Spencer Gifts, Inc.*, 613 F.Supp. 1156, 1160 (D.N.J.1985) (emphasis in original) (citations omitted).

Plaintiff attempts to show pretext by claiming that she was more qualified than Mr. Hanson for the remaining position and by claiming that the company benefited financially by laying off the plaintiff and retaining the less senior employee. The Court is not persuaded that either argument raises a genuine issue of material fact as to pretext. Regarding the first argument, the plaintiff states in the Memorandum in Opposition: "Plaintiffs do not dispute defendant's claim ... that David Anderson *felt* that Gary Hanson was more qualified than plaintiff Saccomanno because he had more experience in the 'relevant area.' Plaintiffs dispute any inference or implication that, *in fact*, Gary Hanson *was* more experienced and qualified in handling the UMWA payroll." In other words, plaintiff agrees that Price River's business judgment, based upon the Accounting Manager's evaluation, was that Saccomanno was the accounting employee least qualified for the remaining position. The plaintiff provides no specific facts, other than her claim of qualification, to suggest that the employer's business judgment is suspect, and the employer responded to plaintiff's claim of qualification at the previous stage of analysis. It is well established that the ADEA does not provide a basis for second guessing an employer's business judgments. As the United States Supreme Court has pointed out, the federal discrimination laws are "not intended to 'diminish traditional management prerogatives.'" *Burdine*, 450 U.S. at 259, 101 S.Ct. at 1096. "The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to ... liability" for employment discrimination. *Id. See also Kephart v. Institute of Gas Technology*, 630 F.2d 1217, 1223 (7th Cir.1980) ("The Age Discrimination in Employment Act ... was not intended as a vehicle of judicial review of business decision"), *cert denied*, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981); *Matthews v. Allis-Chalmers*, 614 F.Supp. 11, 15 (N.D.Ill.1984) ("The Court cannot substitute its judgment for the Company's as to what business skills particular jobs require"), *aff'd*, 769 F.2d 1215 (7th Cir.1985). Consequently, Mrs. Saccomanno's subjective view of her own qualifications cannot be preferred to Price River's business judgment. *Smith v. Flax*, 618 F.2d 1062, 1067 (4th Cir.1980) (Plaintiff's "perception of himself [as to his qualifications] is not relevant. It is the perception of the decision maker which is relevant").

Plaintiff also speculates that the employment decision could have been motivated by the financial benefits the company accrued by terminating the more senior employee. Facts and figures provided by the parties on the financial benefit, if any, are inconclusive at this point. Even assuming that some financial benefit did accrue to Price River because of its decision to lay off Mrs. Saccomanno, the plaintiff only speculates that it could have been a motivating factor. Mere speculation is insufficient to prevent summary judgment. Also, plaintiff's argument on this point is substantially undercut by the undisputed fact that the defendant offered plaintiff an available position shortly before her lay off which she declined to accept.

*—Plaintiff Saccomanno's Failure to Recall Claim*

Plaintiff Saccomanno's second claim alleges unlawful discrimination for the company's alleged failure to recall her to the same or a similar accounting position. The plaintiff bases her claim on the fact

that the defendant recalled a younger employee to an accounting position for which the plaintiff was equally or more qualified. The undisputed facts are that the employer contacted plaintiff Saccomanno and offered her a temporary position doing underground inventory. She declined the offer. The company then offered the position to the younger employee who accepted. The work performed consisted of both underground and aboveground inventory work. The position also developed into additional accounting work for a period of approximately six months. Plaintiff claims that she was not fully informed of what the offer involved or what it potentially could involve. There is no evidence, however, that the offer of temporary employment was calculated to induce plaintiff to decline the position. The Court therefore finds that plaintiff has failed to show that she was adversely affected by an employment decision.

For the foregoing reasons, the Court finds as a matter of law that plaintiffs are unable to demonstrate that but for the factor of age discrimination they would not have been terminated or would have been recalled. The defendant's motion as to all remaining claims is granted.

IT IS SO ORDERED.